## Thirman v. Matthews.

1. In slander, where words are unequivocal, and convey a direct imputation of crime, and point with certainty the person to whom they are intended to apply, no colloquium is necessary.
2. To say of a person "he is a counterfeiter," is actionable per se.
3. Words are to be construed according to their common import
4. Where there are good and bad counts in a declaration, and a general verdict, the judgement will not be reversed, since the statute of *jeofails* of 1824

Robert Matthews brought an action for slander against John Thirman, in the Circuit Court of Morgan county. The venue was changed on the application and shewing of the plaintiff, to the county of Limestone, where the cause was tried.

The declaration, which was filed in Limestone county, consisted of three counts. The first charged the defendant with speaking of the plaintiff in a conversation with one Daniel Thirman, and some others; those words: "Brother Daniel, state to the company about Robert Matthews, Esq. the counterfeiter of Morgan county." Innuendo, that the plaintiff had been guilty of counterfeiting in Morgan county. The second count charged the defendant with speaking of the plaintiff those words: "He is the counterfeiter of Morgan county." Innuendo, that the plaintiff had been guilty of counterfeiting. The the third count was for speaking those words: "Robert Matthews is a counterfeiter of Morgan county." Innuendo, that the plaintiff had been guilty of the crime of counterfeiting. There was not in either of the counts any colloquium concerning any particular kind of counterfeiting. The venue in the first count was laid as follows: "Heretofore, to wit, on the —— day of —— 1823, at the county of Morgan in said State, to wit, in Limestone county aforesaid." The venue in the second and third counts was thus laid: "And afterwards, to wit, on, &c. at, &c. aforesaid." There was an agreement in writing that the declaration and pleas should be filed in all respects as if the suit was originally brought in Limestone county. At September term, 1826, on the plea of the general issue, the jury found a verdict for the plaintiff, and $1400 damages. The defendant moved that the judgement be arrested, which motion was overruled.

Matthews in this Court assigned many matters as error; those relied on are stated in the opinion delivered.

KELLY, HUTCHINSON, and MARTIN, for plaintiff in error,

Argued that the words laid were not actionable *per se*, and as no special damage was laid, the judgement should be arrested. The words laid in the declaration by way of inducement, "intending to injure, &c. and to "cause it to be believed that plaintiff was guilty of felony," &c. are merely formal, and words of course ; and are not necessary to be proved [a] By law it is not indictable to forge a note on an unchartered bank, or coin not current. The words do not import a charge of counterfeiting any thing prohibited by law. The charge must if true, subject the party to legal punishment as well as odium. [b]

*a* 9 Johnson R. 45.

It is settled as a general rule, that words shall be taken in their popular sense, but to that rule the decided cases furnish two exceptions. 1st. The word *rogue* is broad enough to impute the crime of larceny, and in its popular sense, certainly does so ; yet because the word does not necessarily imply that charge, but may, and does mean according to its settled import, something else as well as larceny ; consequently it has never been held actionable to call a man a rogue, unless the term was used in connexion with others calculated to shew the sense in which it was used. 2d. The popular sense of the word forsworn, is more expressive of perjury than roguery is of larceny ; and yet, because the legitimate meaning of the term includes other things as well as perjury, it has never been considered actionable to charge a man with being forsworn, unless the charge is made in connexion with other words, shewing that perjury was meant. In these cases, perjury and larceny are the technical correlatives of the terms sometimes substituted for them in common parlance. Every stealing is not a larceny, nor is every false swearing a perjury, and it is submitted that every counterfeiting is not a forgery ; nor is even every forgery indictable. The fraudulent intent must appear, to constitute the crime. Counterfeiting is the less technical term, and is capable of a more extended application, and seems to bear the same relation to forgery that false swearing does to perjury, and roguery to larceny, and should abide the same laws of legal construction, and form another exception to the general rule.

*b* 1 Saund. 171, n 1 and 4. 242, n 4. 3 Ib. 207, note. 3 Comyn's Dig. old edit. 331. 2 T. R. 151. 6 Ib. 691, 694. 2 Ld. Raymond 825. 1 Cain. 347. 1 Salk. 24. 2 Ib. 696. Willes 443 2 John. Cases 17. 1 Ib 129 3 Mod. 270. 5 Coke 108. 10 Ib. 131. 11 Ib. 45, 56. 12 John. 239. 2 John. 10, 115. 5 John. 211, 118, 476,430,188. 17 John. 217. 8 John. 109. Minor's Ala. R. 93. Laws Ala. 210. Sec. 26–7. Ib. 225. Sec. 6. 6 Bac Ab. title slander. 2 Tidd 831, 827. 1 Sellon 501.

49

JANUARY 1828.

Thirman
v.
Matthews.

a The authorities
cited by the de-
fendant are not
on file.

The verdict is general; if there is one bad count, the judgement is erroneous.

CLAY, M'CLUNG and HOPKINS, for the defendant. [a]

JUDGE CRENSHAW delivered the opinion of the Court.

THE errors insisted on may be reduced to three. 1st. That the words laid in the counts of the declaration are not actionable. 2nd. That some of the counts are bad, and the verdict is general; and 3rd. That there is neither time nor venue laid in the second and third counts.

Words to be actionable in themselves must convey a clear and direct imputation of crime; they must charge an indictable offence which either involves moral turpitude, or which if true, would subject a party to infamous punishment. A colloquium is necessary where the words are ambiguous, or where the subject matter to which, or the person to whom they allude, are uncertain. If the words are unequivocal, and convey a direct imputation of crime, and point out with certainty the person to whom they are intended to apply, a colloquium would be unnecessary.

It has been said that the word counterfeiter has various significations. The dictionary has been referred to, and the treasures of Shakspeare have been called into requisition to prove that the word has an innocent as well as a criminal meaning. Fallstaff said to die was to counterfeit, for he was a counterfeit who had not the life of a man; and when Sir Walter Blunt had assumed the dress and costume of the king, Douglass is made to say to him "who are those that counterfeit the person of a king?" In Walker's dictionary "a counterfeit or counterfeiter, is said to be one who personates another, an impostor, a forger." In common parlance, a counterfeit is a likeness or resemblance, intended to deceive, and to be taken for that which is original and genuine; and when applied to persons, is seldom used in an innocent sense.

In legal parlance, a counterfeiter is one who unlawfully makes base coin in imitation of the true metal, or forges false currency, or any instrument of writing, bearing a likeness and similitude to that which is lawful and genuine, with an intention of deceiving and imposing upon mankind. It is a species of the *crimen falsi*, is indicta-

ble either by common or statute law, involves moral tur-
pitude, and is punished infamously.

But it has been contended that words are to be taken in *mitiori sensu*, and that so long as the words may be innocently construed, a slanderous meaning ought not to be attached to them. This was the old rule, but the rule now is, that words shall be taken in that sense in which they are generally understood, the sense in which they are usually received by the community at large. The expression that Robert Matthews is the counterfeiter of Morgan county, would, I apprehend, convey to the generality of mankind, in this country at least, the idea of crime, the imputation that he was guilty in a legal sense of counterfeiting the coin or other currency of the country, and that he was liable to be prosecuted and punished.

But it was objected that some particular species of counterfeiting should have been expressed, otherwise the words are too general and indefinite, and a colloquium becomes necessary. If a colloquium had been alleged in the declaration, it would be equally necessary to prove it on the trial. Hence, if this objection were to prevail, it would establish a dangerous rule. If there was no colloquium in fact, and the words charged no particular species of counterfeiting, but imported counterfeiting generally, by this rule, the action of slander could not be maintained, though the injury might be equally great. He who destroyed character in general terms would escape justice, while the more specific slanderer would be punished.

I am persuaded that words importing a general imputation of murder, robbery, counterfeiting, or other crime, are slanderous and actionable of themselves, though the person murdered or robbed, or the particular species of counterfeiting be not named in the words ; and that if the charge be positive and the person certain, a colloquium is unnecessary.

The result is, that I think all the counts of the declaration are good except the first, which conveys no positive charge of crime, and is too uncertain without the aid of a colloquium. And this brings me to the second assignment of error, viz : ought the judgement to be reversed where there is one bad count, and the verdict is general in all the counts? An error of this kind has been held fatal. But this objection is now cured by our sta-

JANUARY 1828.

Thirman
v.
Matthews.

tute of *jeofails;* which provides, that if a sufficient cause of action be set out in the declaration, and a material issue has been tried, the judgement shall not be reversed.

As to the third assignment, which was not strenuously urged, I think the time and place is laid with such certainty at least, to be good after verdict. It is the opinion of the Court that the judgement be affirmed.

JUDGE WHITE not sitting.

NOTE. See Minor's Ala. Rep. 138, 259.