## HURLBURD et als. v. BOGARDUS.

K. and S. were the owners of a mule team, which they used in hauling quartz-rock to their quartz-mill—the team was driven by one L., an employee. K. and S. sold the team to H., executing a bill of sale, and delivering the team by the discharge of L., the driver, who was immediately employed by H., and saying to H. "there is the team." K. and S. then hired of H. the team at $8 per day, and put it in the same business of hauling quartz-rock as before, and with L., the same driver. Team was kept and fed at K. and S.'s stable, as before the sale : *Held*, that there was no such actual and continued change in the possession of the property, under H.'s purchase, as to take the case out of the operation of the Statute of Frauds.

APPEAL from the District Court of the Eleventh Judicial District, County of El Dorado.

This was an action to recover the value of four mules, harness, and wagon, of the value of $1150.

McKean and Strohn were the owners of a certain team of mules, harness, and wagon, which they used in hauling quartz-rock to their quartz-mill, in Grizzly Flat, El Dorado county. This team was driven by one.Laycock, a hired hand in their employ. On the 22d day of October, 1857, they being indebted by promissory note to the plaintiffs Hurlburds, executed and delivered to them, in consideration of $1000, a bill of sale of the team, harness, and wagon. The amount was credited on the note which plaintiffs held against them. On the day of sale, the team was engaged in hauling rocks to wall a well of McKean's, and were driven by Laycock. At the time of the execution of the bill of sale, the team and wagon were driven in front of plaintiffs' store, and the act of delivery was made by McKean discharging Laycock, and plaintiffs hiring him to drive the team. McKean then said, pointing to the team, "Here is the team and wagon, and I deliver them to you," (plaintiff,) and saying at the same time, "I have sold them to plaintiffs." Two or three persons were present.

McKean and Strohn then hired the team of plaintiffs at eight dollars per day, to continue the hauling of quartz-rock. Some goods belonging to McKean and Strohn were then put into the wagon, and Laycock then drove the team to McKean and Strohn's mill, and then went to hauling rock for them as before the sale, and continued to do so up to the time they were seized by the defendant on a process against McKean and Strohn. After the sale, the team was kept and fed at McKean and Strohn's

stable. The Court below finds that the sale was *bona fide;* that plaintiffs paid the teamster, etc., but that there was nothing which would give notice to a stranger that a change of possession had taken place. The property was sold by defendant, as sheriff, to satisfy an execution against McKean and Strohn, and plaintiffs brought this suit to recover the value. Defendants had judgment in the Court below, and plaintiffs appealed.

*John Hume* for Appellants.
Cited Wood's Digest, Art. 403, § 16, Statute of Frauds.

*Thos. H. Hewes* for Respondents.
Cited Fitzgerald *v.* Graham, 4 Cal., 289; Stewart *v.* Scannell, 8 Cal., 82; Whitney *v.* Stark, Ib., 517; Vance *v.* Boynton, Ib., 554.

TERRY, C. J., delivered the opinion of the Court—BALDWIN, J., concurring.
In this case, there was no such actual and continued change in the possession of the property, under plaintiffs' purchase, as to take the case out of the operation of the Statute of Frauds. It remained in charge of the same person, at the same place, and was used in the same manner after as before such purchase.
Judgment affirmed.